```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        NORTHERN DIVISION


LOLITA R. WARD                                           PLAINTIFF


VS.                            CIVIL ACTION NO. 3:12-cv-616-WHB-RHW


JACKSON STATE UNIVERSITY;
DR. VIVIAN FULLER, Individually;
DR. CAROLYN MYERS, Individually;
and JOHN DOES 1-10                                       DEFENDANTS
```

## OPINION AND ORDER

This cause is before the Court on the Motion of Defendants for Summary Judgment.  After considering the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds the Motion is well taken and should be granted.


### I.  Factual Background and Procedural History

In 2005, Jackson State University ("JSU"), hired Lolita Ward ("Ward"), as a temporary employee.  See Mot. for Sum. J. [Docket No. 96], Ex. A (Ward Dep.), 41.  Approximately six months later, Ward was hired as a full-time office secretary in the Department of Athletics.  Id., Ex. A, 42.  In August of 2011, JSU hired Dr. Vivian Fuller ("Fuller") to the position of Athletic Director.  Id., Ex. A, 50.  At the time Fuller was hired, Georgina Felder ("Felder"), who was the Administrative Assistant to the Department of Athletics Director, was out on medical leave.  Id., Ex. A, 45.

As a result, tasks were delegated between Ward and LaToya Courtney ("Courtney"), another secretary in the Department. Id., Ex. A, 62, 64. According to Ward, after Fuller arrived, Courtney was assigned to distribute books to students and to work in the ticket office while she, Ward, was required to do all of the other work in the Department. Id., Ex. A, 66, 67-68.

Ward alleges that Fuller began making sexually-suggestive comments to her shortly after she arrived. According to Ward, Fuller once asked her whether she was married and, upon learning that Ward had been married for approximately twenty-two years, commented that she must be a "keeper". Id., Ex. A, 128-30. Ward also claims that twice in August of 2011, Fuller "stuck her tongue out" at her and "wiggled" it in an "inappropriate manner." Id., Ex. A, 218-37. According to Ward, she thought the gesture was "something that a man would do to a woman, something you would see on a movie, a sexual gesture for a man coming onto a woman, not a woman to a woman." Id., Ex. A, 221. The next incident of alleged harassment occurred during the week of August 8, 2011, when Fuller pulled the material on Ward's dress and commented that it was a "nice dress" and she liked the material. Id., Ex. A, 237-40. The final incident of alleged harassment occurred in early September 2011, when Fuller allegedly told Ward she had "big, beautiful legs." Id., Ex. A, 240-43. According to Ward, after she rejected Fuller's inappropriate conduct, Fuller became hostile towards her,

refused to speak to her, openly berated her in front of other employees, insulted her daily, and treated her differently in terms of tasks and responsibilities. See Am. Compl. ¶ 20.

Ward allegedly spoke with Felder, who was then still on medical leave, regarding some of the alleged incidents of harassment. See Mot. for Sum. J., Ex. A, 253-54. According to Ward, Felder told to her:

> to just document as I was doing and to just make sure I write everything down that [Fuller did] to me that I felt was making me uncomfortable ..., and she asked me if I had contacted HR; and I told her that I didn't and told her I didn't feel comfortable contacting HR because Sandra Sellers and Dr. Myers and Dr. Fuller and some of the others were such close friends in what I perceived to be [a] lesbian circle.[1] And I felt like they were going to protect one another. So it would [not] have ... did me any good to contact either of them because they were going to protect Dr. Fuller.

Id., Ex. A, 254. Ward also testified that she left a message requesting that Regina Quinn ("Quinn"), who is general counsel, to telephone her, but she was not contacted by Quinn or anyone else in that office. Id., Ex. A, 253.

On or about August 24, 2011, Ward sought medical treatment for complaints of dizziness, fatigue, and headaches. See Am. Compl. ¶ 22. On or about September 6, 2011, Ward was diagnosed as having high blood pressure, and was instructed to take medical leave. Id. Ward was on medical leave from September 6, through September 26,

---

[1] Sandra Sellers was the Human Resources Director, and Dr. Carolyn Myers was the President, of JSU during the time of Ward's employment.

2011.  See Mot. for Sum. J., Ex. A, 241.  On October 10, 2011, Ward was notified that she was being terminated from her position at JSU.  During a post-termination meeting on October 11, 2011, Ward notified Sellars that she had been subjected to unwanted sexual advances by Fuller.  See id., Ex. I (Inter. Resps.), 10.  An investigation was done into Ward's complaints, and a hearing before the Staff Grievance Committee was scheduled for January 9, 2012. Id., Ex. A, 348, 354.  Ward did not name or bring any witnesses for the hearing, and refused to answer some of the questions posed by the Committee.  Id., Ex. A, 356-58.  Thereafter, the Committee found there was insufficient information to support Ward's allegations of harassment.  Id., Ex. A, 361; Id., Ex. K.

On October 26, 2011, Ward filed a Charge of Discrimination with the EEOC charging that she had been discriminated against on the basis of gender.  See Compl. [Docket No. 1], Ex. A.  In her Charge, Ward alleged that she was notified that she was being terminated from her employment at JSU because of changes and reorganization that were taking place within the Department of Athletics.  Id.  Ward, however, alleged that she was discharged after rebuffing Fuller's sexual advances.  Id.  On December 6, 2011, Ward amended her Charge of Discrimination to include a charge of retaliation.  Id., Ex. B.  In the Amended Charge, Ward alleged that she "was also fired and otherwise harassed after repeated attempts to meet with JSU regarding the treatment [she] was

4

receiving from [Fuller]."  Id.  The EEOC issued its Notice of Rights on June 4, 2012.

On August 30, 2012, Ward filed a lawsuit in this Court against JSU, Fuller, and Myers, and an Amended Complaint was filed on February 26, 2013.  In her Amended Complaint, Ward alleges claims of sexual harassment, hostile work environment, and retaliatory discharge, all in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq*, against JSU.[2]  Ward also alleges that Fuller and Myers violated her rights as protected under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.  Finally, Ward alleges a state law claim of intentional infliction of emotional distress.  Defendants have moved for summary judgment on Ward's claims.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[2] As Ward has alleged claims arising under federal law, the Court may properly exercise federal subject matter jurisdiction in this case under 28 U.S.C. § 1331.

moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim. Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the

record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Discussion

**A.  1983 Claims**

Defendants Myers and Fuller have moved for summary judgment on Ward's 1983 claims arguing (1) Ward did not engage in any protected speech as necessary to maintain a First Amendment violation, (2) Ward was not treated differently than any similarly situated employee as necessary to maintain a Fourteenth Amendment violation, and (3) they are protected by qualified immunity on Ward's Fourteenth Amendment claim. See Mem. in Supp. of Mot. for Sum. J. ("Mem. in Supp. of Mot.")[Docket No. 97], 28-33.  In response, Ward indicates that she "is not contesting her Section 1983 claim against Defendants [Myers and Fuller] individually." See Mem. in Supp. of Resp. to Mot. for Sum. J. ("Mem. in Supp. of Resp.") [Docket No. 109], 15.  As Ward has not shown that there exists a

genuine issue of material fact with respect to the Section 1983 claims she has alleged against Myers and Fuller, the Court finds the Motion for Summary Judgment as to these claims should be granted.

**B.   State Law Claim of Intentional Infliction of Emotional Distress**

Defendants have moved for summary judgment on Ward's state law claim of intentional infliction of emotional distress arguing (1) her claim is barred because she failed to provide notice as required to maintain such claim under the Mississippi Tort Claims Act, and (2) Mississippi law does not generally permit the recovery of damages for intentional infliction emotional distress in cases involving employment disputes.  See Mem. in Supp. of Mot., 33-35. In response, Ward "concedes that she did not submit a notice letter to Defendant JSU in regards to her state law claim of intentional infliction of emotional distress." See Mem. in Supp. of Resp., 15. Based on Ward's concession, and as she has not shown that there exists a genuine issue of material fact with respect to whether damages could be awarded on her state law claim of intentional infliction of emotional distress, the Court finds the Motion for Summary Judgment as to this claim should be granted.

**C.   Title VII Claims**

Ward's Title VII claims are predicated on allegations of same-

sex sexual harassment. In this Circuit, same-sex sexual harassment claims are considered using a two-step approach. At the first step, the court determines whether the alleged conduct constitutes discrimination based on sex. See La Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002). In the event the alleged conduct is found to constitute discrimination based on sex, the court proceeds to the second step at which it must determine "whether the challenged conduct meets the applicable standards for either a *quid pro quo* or hostile environment claim." Id. at 478.

As regards the first step, the United States Supreme Court has identified three ways in which a plaintiff can show that alleged harassment constitutes discrimination based on sex. First, the plaintiff may show "that the alleged harasser made 'explicit or implicit proposals of sexual activity' and provide 'credible evidence that the harasser was homosexual.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Second, the plaintiff "can demonstrate that the harasser was 'motivated by general hostility to the presence of [members of the same sex] in the workplace.'" Id. (quoting Oncale, 523 U.S. at 80). Third, the plaintiff "may 'offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.'" Id. (quoting Oncale, 523 U.S. at 80). Ward is proceeding under the first approach. See Mem. in Supp. of Resp., 4 (arguing that "the actions of Defendant Fuller satisfy the first

9

evidentiary route.").

To satisfy the first <u>Oncale</u> evidentiary approach, Ward must show that Fuller made "explicit or implicit proposals of sexual activity" and provide "credible evidence that [Fuller] was homosexual." <u>Oncale</u>, 523 U.S. at 80. "In short, <u>Oncale</u> allows a reasonable jury to find that when a homosexual [female] proposes sexual activity to another [female], [she] is doing so 'because' of [her] target's gender." <u>Richardson v. BFI Waste Sys. of N. Am., Inc.</u>, 2000 WL 1272455, at *1 (5th Cir. Aug. 15, 2000). The United States Court of Appeals for the Fifth Circuit has "identified two types of evidence that could serve as credible evidence of homosexuality: (1) evidence that the harasser 'intended to have some kind of sexual contact with the plaintiff rather than to merely humiliate him for reasons unrelated to sexual interest', or (2) evidence that the harasser 'made same-sex sexual advances to others, especially to other employees.'" <u>Cherry v. Shaw Coastal, Inc.</u>, 668 F.3d 182, 188 (5th Cir. 2012)(quoting <u>La Day</u>, 302 F.3d at 480).

Ward has not presented any evidence that Fuller made explicit proposals for sexual activity. During her deposition, Ward testified that Fuller had never (1) asked her to engage in any type of sexual act, (2) asked her for any sexual favors, (3) told sexual jokes "or anything like that" in her presence, and (4) talked about sex or anything that was of a sexual nature around her. <u>See</u> Mot.

10

for Sum. J., Ex. A, 278-79. Ward has also not presented any direct evidence that Fuller was homosexual, see id., Ex. A, 213 (Ward testifying that she had no evidence that Fuller was a lesbian, was homosexual, or was interested in women), or that Fuller had made any sexual advances to other female employees. Id., Ex. A., 279 (Ward testifying that she was not aware of other female employees who complained about being sexually harassed by Fuller). Thus, to satisfy the first Oncale evidentiary approach, Ward must show (1) that Fuller made implicit proposals for sexual activity and (2) that Fuller intended to have some kind of sexual contact with her.

Here, the first incident of allegedly offending conduct was Fuller's comment that Ward must be a "keeper" upon learning she had been married for twenty-two years. The Court finds this comment is innocuous as it is lacking in sexual language or overtones, and a reasonable juror could not find it to be an implicit proposal for sex, or evidence that Fuller intended to have sexual contact with Ward.

The second incident of allegedly offending conduct occurred when Fuller touched the fabric of Ward's dress (without touching her skin), and commented that it was a nice dress. Ward testified, however, that she did "not really" think this conduct was suggestive of Fuller's either being homosexual or wanting to engage in sexual activities with her. See id., Ex. A, 239-40 (Ward answering "[n]ot really" to the question "[Y]ou didn't think

11

[Fuller had touched your dress] because she was a lesbian and she wanted you, did you?"). The third incident of allegedly offending conduct occurred when Fuller commented that Ward had big, beautiful legs. In her deposition, Ward testified that if another women had commented that she was pretty, or that she had a nice shape, or was a "brick house", she would not have thought they wanted a sexual relationship with her. See id., Ex. A, 242-43. Ward also testified that the comment was different coming from Fuller only because of Ward's subjective feeling that Fuller was a lesbian. Id., Ex. A, 243. Based on Ward's testimony that she either did not think the above discussed incidents were implicit proposals for sexual activity, or only thought so because of her subjective feelings regarding Fuller's sexual orientation, the Court finds she has failed to show that a reasonable juror would find Fuller's comments to be implicit proposals for sex, or evidence that Fuller intended to have sexual contact with Ward.

The fourth and fifth incidents of allegedly offending conduct are the two tongue waggling incidents. With respect to the first incident, Ward testified that she and Fuller had been walking down the hallway and when she, Ward, turned she saw Fuller making the allegedly offending tongue gesture. Id., Ex. A, 221. When asked what made her believe that she "didn't happen to turn around and catch Fuller when she was doing something with her mouth or with her tongue and that it was not necessarily directed at [her]", Ward

12

responded "I don't know. Based on what I saw and the way I felt, I felt it was directed toward me." Id., Ex. A, 222. The second tongue-related incident occurred approximately one week later. With respect to this incident, Ward testified that Fuller made the offending waggle while she was walking "toward the doorway of [Ward's] office." Id., Ex. A, 224. See also id., Ex. A, 226 (Ward testifying that Fuller had been "walking toward [her] office"); id., Ex. A, 228 (Ward testifying, when asked about Fuller's location when the waggle occurred, that Fuller "was almost in my office at the doorway, but she hadn't made it yet."). Based on Ward's testimony, the Court finds she has failed to show that a reasonable juror would find the alleged waggles by Fuller to be implicit proposals for sex, or evidence that Fuller intended to have sexual contact with Ward.

In sum, having considered the five alleged incidents of offending conduct in the light most favorable to Ward, the Court finds she has not presented sufficient evidence to show that there exists a genuine issue of material fact with respect to whether a reasonable jury could conclude that Fuller was making explicit or implicit proposals for sex, and that Fuller was a homosexual. The evidence in this case simply falls short of that previously found sufficient by the Fifth Circuit. See e.g. Cherry, 668 F.3d at 188 (finding the plaintiff had presented sufficient evidence that the alleged same-sex harasser's conduct was sexual in nature in a case

13

in which the harasser repeatedly brushed against the plaintiff's body; told him to take of his clothing and wear cut-off shorts; regularly commented on the plaintiff's looks; sent the plaintiff text messages that included "I want cock", "ur 2 sexy. U drive me insane .... Ur sexy voice puts me to slumber", and "your missing the dipper," which was a term he used to refer to his penis; regularly touched the plaintiff on his leg and shoulder and rubbed his hair and, on one occasion, put his hand on the plaintiff's butt; and invited the plaintiff to stay over at his house and told him "You don't need to wear any clothes. You can wear my underwear."); La Day, 302 F.3d at 480 (finding there was a fact issue as to whether the alleged same-sex harasser was motivated by sexual attraction in a case in which the harasser said he was jealous when he learned the plaintiff had a girlfriend; had approached the plaintiff, who was then bending over, from behind and fondled his anus in a manner "similar to 'foreplay with a woman'"; spat tobacco on the plaintiff after being told "I don't play like that"; had been the subject of two other complaints of same-sex harassment with one complainant stating the harasser asked the complainant to sit on his lap, and told him that he had "pretty lips" and could "suck [his] dick", and the other complainant stating the alleged harasser had touched him in the area of his genitals); Richardson, 2000 WL 1272455, at *1 (finding there was sufficient evidence that the alleged harasser was a homosexual in

14

a case in which the alleged harasser had propositioned the plaintiff for oral and anal intercourse, had exposed himself to the plaintiff, had touched the plaintiff's buttocks in a sexual manner, and had "vividly described his previous sexual activity with other men."). Accordingly, the Court finds the Motion for Summary Judgment on Ward's sexual harassment and hostile work environment claims should be granted.

**D. Retaliation**

Under Title VII, it is unlawful for an employer to discriminate against an employee who has either (1) opposed a practice deemed an unlawful employment practice under Title VII, or (2) has made a charge under Title VII. See 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013)(citations omitted). In the event a prima facie case of retaliation is established, the burden shifts to the employer that must then articulate a legitimate, non-retaliatory reason for its employment decision. Id. If the employer satisfies its burden, the burden shifts back to the employee who must then demonstrate

15

that the employer's reason is actually a pretext for retaliation. Id. To satisfy this burden, the employee must show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive." Id. (quoting University of Tex. Sw. Med. Ctr. v. Nassar, --- U.S. ---, 133 S.Ct. 2517, 2533, (2013)).

Here, Ward has satisfied the first two prongs of her prima facie case of retaliation because she reported some of Fuller's allegedly harassing conduct to Felder and she was terminated. Defendants have moved for summary judgment on Ward's retaliation claim arguing that she has failed to satisfy the third prong of her prima facie case. As regards this prong, the Fifth Circuit has determined "that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003)(citing Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir. 2001) and Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir. 1999)("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.")). Such showing is required because, "[i]f the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against

the plaintiff for having engaged in that activity." <u>Manning</u>, 332 F.3d at 883 n.6.

Here, the record shows that Ward reported some of Fuller's allegedly harassing conduct to Felder. <u>See</u> Mot. for Sum. J., Ex. A, 252-54, 273-74. It is undisputed that Felder was on medical leave at the time Ward contacted her. <u>Id.</u>, Ex. A, 253. According to Felder, she told Ward "I [am] not there. I [am] not going to call anyone. I [am] not going to interfere because I [am] not there", and that the best thing Ward could do was to go to Human Resources. <u>Id.</u>, Ex. F (Felder Dep.), 57. According to JSU, it did not receive any complaint of harassment from Ward until after she received her termination notice. <u>Id.</u>, Ex. I, 10. Although Ward testified that Felder told her that she had contacted the Human Resources Department, <u>see id.</u>, Ex. A, 268, the Court finds this testimony cannot be considered because it constitutes inadmissible hearsay for which there is no exception under the Federal Rules of Evidence. Relevant to this issue, the United States Court of Appeals for the Fifth Circuit has held:

> Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.

<u>Duplantis v. Shell Offshore, Inc.</u>, 948 F.2d 187 (5th Cir. 1991)(quoting <u>Geiserman v. MacDonald</u>, 893 F.2d 787, 793 (5th Cir. 1990)). The Federal Rules of Evidence define "hearsay" as "a

17

statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Here, Ward's testimony that Felder told her that she had contacted the Human Resources Department is a textbook example of hearsay as Ward is attempting to use her testimony to introduce a statement made by an out-of-court declarant (i.e. Felder) to prove the truth of the matter asserted in that statement (i.e. that her complaints of sexual harassment had been reported to the Human Resources Department). The Court finds that because Ward is trying to admit evidence of her own recollection of what Felder said to her in a telephone conversation, and is further trying to use her testimony to show that her complaints of sexual harassment had been reported to the Human Resources Department, her testimony on this issue constitutes hearsay. See e.g. Bellard v. Gautreaux, 675 F.3d 454, 461 (5th Cir. 2012)(finding the plaintiff's attempt "to admit evidence of his own recollection of what someone else said in a conversation with him" was inadmissible hearsay, and that the district court had not erred by refusing to consider the evidence when ruling on a motion for summary judgment). See Mot. for Sum. J., Ex. A, 270.

In sum, having reviewed the evidence in a light most favorable to Ward, the Court finds she has failed to show that there exists a genuine issue of material fact with respect to whether JSU knew

of the complaints she made to Felder at the time she was terminated. As such, the Court finds Ward has failed to show that there exists a genuine issue of material fact with respect to whether there exists a causal connection between the complaints she made to Felder and her termination. Accordingly, the Court finds the Motion for Summary Judgment on Ward's retaliation claim should be granted.

### IV. Conclusion

For the foregoing reasons, and having found that Ward has failed to show that there exists genuine issues of material fact with respect to any of the claims alleged in her Amended Complaint:

IT IS THEREFORE ORDERED that the Motion of Defendants for Summary Judgment [Docket No. 96] is hereby granted. A Final Judgment dismissing this case with prejudice shall be entered this day.

SO ORDERED this the 13th day of March, 2014.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE